**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

TRAVEL SUPREME, INC.,        )
                                   )
           Plaintiff,          )
                                   )
        v.                    )     NO. 3:07cv194 PPS
                                   )
NVER ENTERPRISES, INC., d/b/a  )
WESTERN MOTOR COACH, a    )
Washington Corporation,       )
                                   )
           Defendant.     )

**OPINION AND ORDER**

Plaintiff Travel Supreme, Inc. is an Indiana corporation that manufactures recreational vehicles.   Defendant NVER Enterprises, Inc. is a Washington Corporation, and is a retail dealer of RVs.  In April 2001, the two parties entered into a dealer agreement whereby NVER would serve as a non-exclusive dealer for Travel Supreme's RVs in the State of Washington.  It appears that over the next four years NVER ordered RVs from Travel Supreme amounting to approximately $11 million worth of business.  The relationship fell apart and Travel Supreme ultimately filed this action in Indiana state court seeking a declaratory judgment regarding the effect of the 2001 agreement and seeking damages for orders placed and cancelled by NVER. NVER removed the case to this Court, and then moved to dismiss or transfer under Federal Rules of Civil Procedure 12(b)(2) and (3) [DE7&8].  NVER asserts that this Court lacks personal jurisdiction and is an improper venue for this case and therefore seeks dismissal or transfer to the Western District of Washington.  Alternatively, Defendant requests that this Court transfer the case pursuant to 28 U.S.C. § 1404(a).  For the reasons discussed below, the Court denies

Defendant's motions.

# I. BACKGROUND

For several years, NEVER purchased and/or ordered RVs wholesale from Travel Supreme.  At least for a time, this relationship was reduced to a dealer agreement, which was entered into in April 2001.[1]  This agreement provided that NEVER would serve as a non-exclusive dealer for Travel Supreme products in Washington and provided an option for a dealership in Arizona.  Although it is not clear how the agreement was negotiated, no Travel Supreme employees went to Washington to negotiate the contract, and it was executed by Travel Supreme in Indiana.

Over the course of four years after the 2001 agreement, NVER purchased $11 million worth of RVs from Travel Supreme and Travel Supreme manufactured 61 RVs in Indiana.  Those orders were made by NVER contacting Travel Supreme in Indiana.  During that period NVER also initiated change orders with Travel Supreme by telephone, facsimile, or mail.  Between the orders and the change orders, Travel Supreme claims its Indiana facilities received several hundred communications from NVER during the period in question.

Most often, the products were shipped to Washington.  However, on four occasions, the units were sold to NVER "F.O.B. Wakarusa, Indiana."  On three of those occasions, NVER paid Travel Supreme to deliver the unit directly to NVER's customer, which required Travel Supreme to conduct a customer walk through and explanation.  On the fourth occasion, NVER itself

---

[1]The exact type of relationship between the parties is the essence of this dispute.  The parties disagree as to whether the agreement governed each of NVER's orders from Travel Supreme or if the agreement was no longer in force for many of the orders.  For the purposes of deciding personal jurisdiction, this Court relies upon Travel Supreme's factual allegations.  *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

picked up the unit in Indiana.

Beyond the orders that were filled, NVER placed at least eight orders which it later canceled.  NVER contacted Travel Supreme in Indiana to communicate those cancellations.  Furthermore, the cancellations created an excess supply of units for Travel Supreme, which had to find alternate purchasers for the customized units.

Finally, Travel Supreme also maintained three types of accounts for NVER in its Indiana office.  Those accounts included NVER's parts account, warranty claims account, and sales rebate account in Indiana.  From 2004 to 2006, Travel Supreme tracked 169 warranty claims for NVER, which totaled more than $80,000.

Sometime after entering the April 2001 agreement, the relationship soured.  Travel Supreme alleges that NVER did not live up to its obligations under the agreement, and specifically that it did not maintain the stocking requirements it mandated.  Travel Supreme also claims it received various customer complaints regarding NVER.  In October 2005, Travel Supreme gave NVER notice that it intended to terminate the relationship.  In March 2007, Travel Supreme received a letter from NVER in which NVER demanded that Travel Supreme repurchase NVER's two-year old Travel Supreme inventory.  Travel Supreme refused and filed this suit in the Superior Court in Elkhart County, Indiana.  The two-count complaint seeks a declaratory judgment regarding the existence of a valid dealer agreement and damages relating to NVER's canceled orders.  Specifically, Travel Supreme seeks an order finding that there is no dealership agreement between the parties; or alternatively, if such an agreement exists, that it is terminable at will by either party and does not obligate Travel Supreme to repurchase any product or pay legal fees or expenses.

In April, NVER removed the suit to this Court.  In May, NVER filed the present motions to dismiss and/or transfer.  NVER asserts, first, that this Court lacks personal jurisdiction because NVER has insufficient contacts with the State of Indiana to satisfy due process.  Second, NVER claims that even if this Court has personal jurisdiction over both parties, the Northern District of Indiana is an improper forum under 28 U.S.C. § 1391(a) and this Court should either dismiss the case or transfer it pursuant to 28 U.S.C. § 1406(a).  As a final alternative, if this Court finds it has personal jurisdiction and venue is proper, NVER asks this Court to transfer it under the doctrine of *forum non conveniens* as codified in 28 U.S.C. § 1404(a).  The briefing on the motions is now complete.  Within the briefing, the parties have submitted three affidavits, two from Travel Supreme and one from NVER.  Although there has not been a hearing on these motions, the Court believes it has sufficient information to now dispose of them in turn.

## II.  DISCUSSION

### A.    PERSONAL JURISDICTION

A plaintiff bears the burden of demonstrating the existence of personal jurisdiction over a defendant and must come forth with a *prima facie* showing that jurisdiction over a defendant is proper.  *Purdue Research Found.*, 338 F.3d at 782; *RAR*, 107 F.3d at 1276.  In determining whether a plaintiff has met this burden, a court may consider affidavits from both parties. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987) *superceded by statute on other grounds*. The allegations in the plaintiff's complaint are to be taken as true unless controverted by the defendant's affidavit; and any conflicts in the affidavits are to be resolved in plaintiff's favor.  *Id*. *See also Purdue Research Found.*, 338 F.3d at 782-83.

A federal district court exercising diversity jurisdiction has personal jurisdiction only if a

court of the state in which it sits would have such jurisdiction.  *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).  Ordinarily, whether a state court has jurisdiction over a party requires a two-step analysis:  the Court must first determine whether the state's long arm statute would confer jurisdiction over the party; and second whether the exercise of that jurisdiction satisfies due process.  *Purdue Research Found.*, 338 F.3d at 779.  However, in 2003, the Indiana long arm statute was amended to "extend[] to the limits of the Constitution." *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006) (quotation marks omitted).  In particular, Indiana Trial Rule 4.4(A) specifically states that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."  Ind. T.R. 4.4(A).  Therefore, my focus is solely on the due process analysis.

To exercise jurisdiction over NVER, due process requires minimum contacts with the State of Indiana and that those contacts, in light of other relevant factors, demonstrate that "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).  *See also Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 942-43 (7th Cir. 2000).  A court examines whether the defendant's contacts with the state are such that he should reasonably anticipate being haled into court there. *Burger King*, 471 U.S. at 474; *Cent. States*, 230 F.3d at 943.  The defendant must have purposefully availed himself of the privilege of conducting activities in the forum state, invoking the benefits and protections of its laws.  *Burger King*, 471 U.S. at 474-75; *Cent. States*, 230 F.3d at 943.

To meet the "minimum contacts" threshold, there are two types of contacts that may be

5

sufficient to establish jurisdiction: (1) the defendant's contacts with the forum state that are unrelated to the basis of the lawsuit – known as general jurisdiction; and (2) the defendant's contacts that are related to the subject matter of the lawsuit – specific jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & nn. 8-9 (1984). Only the second type of minimum contact – specific jurisdiction – need be addressed because it readily exists here.

In determining whether specific personal jurisdiction exists, a court must consider whether the defendant has purposefully established contact with the forum state and the basis of the lawsuit must arise out of these contacts. *See Purdue Research Found.*, 338 F.3d at 780. *See also World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 292 (1980); *Int'l Shoe,* 326 U.S. at 316-17. When employing this test, I must focus on foreseeability and whether the defendant could have anticipated being haled into courts of the state with respect to the matter at issue. *Purdue Research Found.*, 338 F.3d at 780.

Jurisdiction is proper where the contacts proximately result from actions by the defendant that create a substantial connection with the forum state. *Burger King*, 471 U.S. at 475. Thus, where a defendant has deliberately engaged in significant activities within a state, or has created continuous obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well. *Id*. at 475. Moreover, "although territorial presence may indeed be an important factor in many cases, it is by no means essential." *Purdue Research Found.*, 338 F.3d at 781. For example, if "a commercial

6

defendant's efforts are directed toward a particular jurisdiction, the fact that the actor did not actually enter the jurisdiction is not of crucial importance." *Id*. But simply contracting with a party based in Indiana is not enough to establish the required minimum contacts. *See TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 589 (7th Cir. 2005) (citing *Burger King*, 471 U.S. at 472 n. 14); *Purdue Research Found.*, 338 F.3d at 781.

Although NVER does not maintain an office in Indiana and generally does not seek out customers in Indiana, its contacts with the State regarding this case are sufficient to establish the necessary minimum contacts.   The NVER contacts with Indiana all relate specifically to the present action.   As described above, those contacts consist of a series of orders initiated by NVER and were placed with Travel Supreme's offices in Indiana.   The orders caused the production of no fewer than 61 RVs and resulted in approximately $11 million worth of business between the two over the course of several years.

NVER also specifically requested that several of those orders be delivered either to NVER's customers or NVER itself in Indiana.   Where the delivery was to the customer, NVER's requests resulted in Travel Supreme having to conduct the customer walk-through and explanation at the time of delivery.   NVER also canceled orders with Travel Supreme, causing Travel Supreme to experience excess inventory and incur a loss of approximately $25,000.   Whether under a dealer agreement or not, these activities do not demonstrate a passing relationship between the parties; rather, it shows  a long-term, systematic relationship creating a substantial connection with the State of Indiana.   Therefore this Court is satisfied that the "minimum contacts" prong of the due process analysis has easily been met.

"Once it has been decided that a defendant purposefully has established contacts within the

forum state, those contacts may be evaluated in light of other factors to determine . . . whether the exercise of jurisdiction would be compatible with fair play and substantial justice."  *Purdue Research Found.*, 338 F.3d at 781 (quotation marks omitted).  In conjunction with the activities that demonstrate the minimum contacts with a forum, a court

> may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id*. (brackets and quotation marks omitted).  "These factors rarely will justify a determination against personal jurisdiction."  *Id*. at 781 n. 10.

In evaluating all of the factors relevant to this analysis, this Court finds that the assertion of personal jurisdiction over NVER in this case would be compatible with fair play and substantial justice.  The Court recognizes that the assertion of personal jurisdiction in Indiana subjects NVER to burdensome litigation halfway across the country.  Thus, the first factor weighs against finding satisfaction of fair play and substantial justice.  However, most of the remaining factors counsel in favor of personal jurisdiction.

The second factor -- the State of Indiana's interest in adjudicating the dispute -- is stronger than NVER suggests.  NVER simply reduces this case to "whether a Washington-based dealership will continue to exist."  (Reply [DE12] at 3.)  But Indiana also has an interest in adjudicated matters related to the contractual obligations of its residents.  Indeed, if Plaintiff's allegations are to be believed (as they must at this stage), NVER has continuously and regularly initiated manufacturing within Indiana, created interaction with NVER's customers in Indiana, and have caused losses in Indiana.  Therefore, while the State of Washington may have an express interest – or even a stronger

interest than Indiana – in the adjudication of disputes such as the present litigation, that is not the question.  The question is whether Indiana has an interest in adjudicating this dispute, which it plainly does.

Under the third factor, Travel Supreme obviously has a strong interest in obtaining convenient and effective relief.  While Travel Supreme may be able to obtain that effective relief  in Washington, it's far from convenient.  NVER essentially makes this point for Travel Supreme by arguing that by requiring Travel Supreme to litigate in Washington, it may deter them from litigating at all.  But this only serves to prove the point that Travel Supreme has a strong interest in obtaining convenient relief.  This factor therefore weighs in favor of exercising jurisdiction.

With respect to the fourth factor – the efficient resolution of the dispute – NVER's argues that litigating in Washington may require Travel Supreme to pursue pre-suit mediation under Washington state law.  This isn't particularly persuasive given that this court has mandatory alternative dispute resolution, *see* L.R. 16.6, which is the functional equivalent of what Washington evidently mandates.  Given that this lawsuit has already been filed and has been pending for some time, any benefit to sending it back to Washington for pre-litigation mediation is silly since the litigation is well on its way anyway.

Fifth, although Washington has an express social policy that is manifested in a specific statutory provisions for dealer/manufacturer disputes (*id*. at 3-4), NVER again fails to explain why this Court could not fulfill those statutory provisions if they apply.  While the applicability of the Washington statute will require a choice of law analysis, this Court is fully capable of conducting that analysis and, if the choice is simply between Indiana and Washington law, is fully capable of interpreting the pertinent law.

Lastly, the factors specific to contractual cases also weigh in favor of asserting personal jurisdiction. Here, regardless of whether the parties' relationship is governed by one dealer agreement, a series of independent orders, or both, it is clear that this is not simply a matter of a one-off contract. Rather, the parties negotiated the terms of the dealer agreement and Travel Supreme's representatives were in Indiana. Furthermore, each individual order was communicated by NVER in Washington to Travel Supreme in Indiana. In other words, NVER continuously reached out to its supplier in Indiana. The parties appear to have contemplated continuing this course of dealing indefinitely. Moreover, for at least some of the orders, delivery was to be made to either NVER or NVER's customers in Indiana. These considerations, therefore, weigh in favor of finding jurisdiction.

NVER points to *Kuhn Knight, Inc. v. VMC Enterprises, Inc.*, 464 F. Supp. 2d 806 (E.D. Wis. 2006) as support for its argument that this Court lacks personal jurisdiction. (*See* Def. Br. in Supp. of Def.'s Rule 12(b)(2) and 12(b)(3) Mots. To Dismiss, or in the Alternative, Transfer ("Brief") [DE9] at 1-5.) *Kuhn Knight* involved a dealership dispute between a dealer in Arizona and a multinational Delaware corporation with offices throughout North America, and its principal place of business in Wisconsin. 464 F. Supp. 2d at 809. Although the case was "a close one," the court held that it did not have jurisdiction. *Id*. The court noted that the Arizona-based defendant had insignificant contacts with Wisconsin, none of which related to the basis for the case. *Id*. at 813. But critical to the court's analysis was the fact that the plaintiff "dissuaded [the] defendant from contacting it in Wisconsin, directing [the] defendant to contact its territorial manager in Colorado with all questions, and to make payments to plaintiff's Colorado office, rather than to its Wisconsin headquarters." *Id*. The defendant complied with that request. *Id*. In the end, the only real

connection the case had to Wisconsin was that the plaintiff processed the defendant's orders and manufactured the machinery in Wisconsin. *Id.* But, the court noted, the plaintiff had many manufacturing plants and its decision to carry out its obligations from the Wisconsin plant was merely a unilateral action, which was insufficient to draw the defendants into a Wisconsin court. *Id.*

The present case provides a much stronger basis for asserting jurisdiction. Unlike the Arizona defendant in *Kuhn Knight*, NVER had continuous contacts with the forum state, all of which were related to the litigation. Moreover, NVER routinely and repeatedly reached out to Indiana to place orders, alter orders, and even request delivery of final products in Indiana. Most importantly, the critical factor in *Kuhn Knight* – the demand that the Arizona defendants contact the Colorado office rather than Wisconsin – clearly distinguishes it from the present case. Here, to the Court's knowledge, NVER was never dissuaded from contacting Travel Supreme's offices in Indiana (other than when Travel Supreme sought to terminate the relationship); and in fact NVER contacted the Indiana office regularly. Moreover, unlike *Kuhn Knight*, where the defendant appears to have been powerless over the choice to manufacture the products in Wisconsin, NVER specifically reached out to an Indiana company and could easily anticipate being haled to an Indiana court on matters related to those orders. NVER was not at the whim of Travel Supreme's production decisions; NVER selected an Indiana supplier.

Under these circumstances, the Court finds that the factors counsel in favor of finding that NVER's contacts with the State of Indiana satisfy the fair play and substantial justice requirements of due process. By choosing to do continuous business with an Indiana supplier NVER could reasonably anticipate being haled into an Indiana court as the result of its activities with Travel Supreme.

**B.      DISMISSAL OR TRANSFER FOR IMPROPER VENUE**

NVER next moves the Court to either dismiss this action or transfer it due to improper venue based upon 28 U.S.C. §§ 1391(a) and 1406(a).  NVER does not explicitly argue that venue is improper in the Northern District of Indiana, but rather seems to argue that venue would be more appropriate in Washington.  (*See* Brief at 5-8; Reply at 4-5.)  It relies heavily upon the venue provision of the Washington dealership statute, which NVER asserts is applicable here.[2]  Essentially, NVER's argument is that because Indiana's choice of law provisions would result in the application of Washington law, the Washington venue statute applies and mandates that this case be tried in Washington.

NVER's argument suffers from at least two critical flaws.  First, because this case was removed from state court, federal procedural laws – in particular the venue and transfer statutes 28 U.S.C. §§ 1404 and 1406 – apply.[3]  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 26-27 (1988).  Consequently, the Washington venue statute is irrelevant to this Court's analysis.

Second, because this case was removed, it is governed by the removal statute, not the general

---

[2]The Washington statute provides, in pertinent part:

> Notwithstanding the provisions of a franchise agreement or other provision of law to the contrary, the venue for a . . . lawsuit . . . whether arising under this chapter or otherwise, in which the parties or litigants are a manufacturer or distributor and one or more motor vehicle dealers, is the state of Washington.

RCW 46.96.240 (2003).

[3]28 U.S.C. § 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

venue statute.  *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953).  While the

Seventh Circuit has not determined whether § 1391 or § 1441 applies to venue issues for removed

cases, several district courts within the Circuit have applied § 1441.  *See, e.g., Allied Van Lines, Inc.*

*v. Aaron Transfer & Storage, Inc.*, 200 F. Supp. 2d 941, 945 (N.D. Ill. 2002) (citing cases).

Furthermore, other circuits have held that not only does the removal statute apply, but that "as a

matter of law § 1441(a) establishes federal venue in the district where the state action was pending."

*Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1300 (11th Cir. 2001).  *See also Kerobo v. Sw. Clean*

*Fuels, Corp.*, 285 F.3d 531, 535-36 (6th Cir. 2001) ("There is only one federal venue into which a

state court action may be removed, and that is the statutorily dictated district court for the district

and division embracing the place where the state court action was pending") (quotation marks and

brackets omitted).  Those cases hold that, because § 1406(a) is predicated on the case laying in the

wrong venue and § 1441(a) establishes that the court to which a case is removed is the proper venue,

dismissal under § 1406(a) is not available for a removed case.  *See Hollis*, 259 F.3d at 1299-1300;

*Kerobo*, 285 F.3d at 535-36.[4]  This Court, like other courts that have confronted this issue, is

persuaded that the *Hollis* analysis is the correct interpretation.  *See, e.g., Three M Enters., Inc. v.*

*Tex. D.A.R. Enters., Inc.*, 368 F. Supp. 2d 450 (D. Maryland 2005).

        In the present case, § 1406(a) is unavailable to NVER.  NVER removed the present case

---

        [4]However, some cases, including cases in the Seventh Circuit, have held that it may be
possible to assert § 1406(a) to transfer a case after removal in certain circumstances.  *See Bentz*
*v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985); *Aguacate Consol. Mines, Inc. v. Deeprock, Inc.*,
566 F.2d 523, 524 (5th Cir. 1978).  *See also Riley v. Union Pac. R. Co.*, 177 F.2d 673, 675 (7th
Cir. 1949).  These cases suggest that it might be possible to invoke § 1406(a) to transfer a case
where there is an impediment to the district court's ability to adjudicate the case on the merits,
such as where it lacks jurisdiction.  Because this Court has found that it has jurisdiction, and
because there does not appear to be any other impediment to this Court's ability to adjudicate the
claims, § 1406(a) is not available to NVER as a transfer statute either.

from the Circuit Court of Elkhart County, expressly invoking § 1441(a).  (*See* Notice of Removal

[DE3] at 1-2.)  Therefore, pursuant to § 1441(a), venue is proper in this Court.  As a result, this is

not the "wrong division or district," so § 1406(a) does not apply.  However, this analysis does not

prohibit NVER's motion to transfer under the doctrine of *forum non conveniens* as codified in §

1404.  It is to that question the Court now turns.

**C.      TRANSFER UNDER § 1404(a)**

Section 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might

have been brought."  28 U.S.C. § 1404(a).  The statute codifies a district court's power to transfer an

action based on the common law doctrine of *forum non conveniens*.  *See Sinochem Int'l Co. Ltd. v.*

*Malaysia Int'l Shipping Corp.*, __ U.S. __, 127 S. Ct. 1184, 1190-91 (2007).  District courts are

given more discretion under § 1404(a) than they had under the doctrine of *forum non conveniens*.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 264-65 (1981) (citations omitted).  In exercising

discretion to transfer under § 1404(a), district courts employ a "flexible and individualized analysis."

*Stewart Org.*, 487 U.S. at 29.  *See also Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d

1286, 1293 (7th Cir. 1989); *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986); *IP Innovation L.L.C.*

*v. Lexmark Int'l, Inc.*, 289 F. Supp. 2d 952, 953 (N.D. Ill. 2003).

In considering motions to transfer under § 1404(a) court should consider:  (1) whether venue

is proper in the transferor district; (2) whether venue and jurisdiction are proper in the transferee

district; and (3) whether the transfer will serve the convenience of the parties and the witnesses as

well as the interests of justice. *See Stewart Org.*, 487 U.S. at 29-31;  *First Nat'l Bank v. El Camino*

*Res., Ltd.*, 447 F. Supp. 2d 902, 911 (N.D. Ill. 2006).  As discussed above, venue is proper in this

14

Court.  Venue is also proper in the Western District of Washington because it is a judicial district where NVER resides and where a substantial part of the events giving rise to the claim took place. *See* 28 U.S.C. § 1391(a).

Having satisfied the two preliminary requirements, the Court must consider whether transfer serves the convenience of the parties, the witnesses, and the interest of justice.  In that analysis, "[t]he movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient."  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).  *See also Heller*, 883 F.2d at 1293; *IP Innovation*, 289 F. Supp. 2d at 953-54. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *In re: Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quotation marks omitted).  Although § 1404(a) specifically delineates the factors to consider, "these factors are best viewed as placeholders for a broader set of considerations, the contours of which turn upon the particular facts of each case."  *Coffey*, 796 F.2d at 219 n. 3.  This Court therefore must analyze those factors and considerations.

### 1.    Private Interests - the Convenience of the Parties and Witnesses

In examining the private interests, *i.e.*, the convenience of the parties and witnesses, the Court is guided by several considerations.  Those considerations include: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to the sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses.  *See First Nat'l Bank*, 447 F. Supp. 2d at 911-12; *IP Innovation*, 289 F. Supp. 2d at 954.  *See also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947), *superceded by statute* 28 U.S.C. § 1404.  As a rule, when the parties reside in different states, "there is no choice of forum that will avoid imposing inconvenience; and

15

when the inconvenience of the alternative venues is comparable there is no basis for a change in venue; the tie is awarded to the plaintiff." *Nat'l Presto*, 347 F.3d at 664.

Regarding the first consideration, Travel Supreme has chosen this forum, which is its home. However, "when the wrongful conduct complained of takes place almost entirely outside of the chosen forum, the plaintiff's choice of forum loses much of its ordinary importance." *IP Innovation*, 289 F. Supp. 2d at 955 (citing *Chicago, R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)). According to the pleadings, although much of the alleged wrongful conduct took place in Washington, at least some of it took place in Indiana.  This Court therefore finds that this consideration weighs against transfer, but only slightly.

Conversely, the second consideration weighs slightly in favor of transfer.  Although this is a declaratory judgment action, "in a breach of contract case, the situs is where the business decisions causing the breach occurred." *First Nat'l Bank*, 447 F. Supp. 2d at 912 (citing *Hyatt Corp. v. Personal Commc'ns Indus. Ass'n*, No. 04 C 4656, 2004 WL 2931288, at *3 (N.D. Ill. Dec. 15, 2004)).  Here, the relevant business decisions – NVER's decisions to cancel their orders as alleged in Count II – were likely made in Washington.  But because Count I seeks a declaratory judgment regarding the dealer contract, the central question is about the formation and validity of a contract. According to the pleadings, that contract was entered into with one party in Washington and one party in Indiana, and performance to take place largely in Washington.  Thus, while the second consideration may favor transfer, it is only slight.

The third and fourth considerations – the access to the sources of proof and the convenience of the parties – weigh against transfer.  NVER argues that it would have greater ease of access to its files in Washington because they are located in that state.  (*See* Brief at 10.)  Conversely, Travel

Supreme's documents are located in Indiana.  (*See* Br. in Supp. of Pl.'s Reply to Def.'s 12(b)(2) and 12(b)(3) Mots. to Dismiss, or in the Alternative, Transfer ("Response") [DE10] at 14.)  Thus, the ease of access is equal.  Similarly, because the parties reside in their respective states, the convenience of the parties does not counsel in favor of transfer.  *See IP Innovation*, 289 F. Supp. 2d at 955 ("It is axiomatic that a motion to transfer cannot be used simply to shift the one party's inconvenience onto another party.").  *See also First Nat'l Bank*, 447 F. Supp. 2d at 913 (same).  Because NVER's rationale for transfer is basically to shift the burden to Travel Supreme, the access to the sources of proof and the convenience of the parties weighs against transfer.

The final private interest consideration also does not weigh in favor of transfer.  NVER makes a meager showing regarding this consideration.  (*See* Brief at 10.)  NVER simply asserts that "the majority of [NVER's] witnesses reside in or near Lynnwood, Washington, and none of them live in the Northern District of Indiana. . . .  These witnesses are all outside the one hundred (100) mile subpoena power of this Court" and that "the cost of obtaining the attendance of willing witnesses necessarily will be lower in Washington for Washington residents."  (*Id.* (quotation marks and citations omitted).)  As with the third and fourth considerations, Travel Supreme makes the converse argument regarding its witnesses.  (*See* Aff. of Glenn Troyer ¶ 9.)  First, "[i]t is assumed that employees of a party will appear voluntarily, so this court's subpoena power is not implicated" by NVER's potential employee-witnesses.  *IP Innovation*, 289 F. Supp. 2d at 955.  *See also First Nat'l Bank*, 447 F. Supp. 2d at 913.  Second, while NVER's party witnesses are given some weight, their convenience is given no more weight than the convenience of Travel Supreme's party-witnesses.  *See First Nat'l Bank*, 447 F. Supp. 2d at 913.  That leaves only non-party witnesses for the Court to consider, but NVER has failed to sufficiently demonstrate that there are any such

17

witnesses.  "The party seeking transfer must specify the key witnesses to be called and make a

generalized statement of their testimony," and "[t]he burden is on the moving party to show that the

testimony of these particular witnesses is necessary to his case."  *Id*. at 911-12.  *See also Heller*, 883

F.2d at 1293; *IP Innovation*, 289 F. Supp. 2d at 955.  NVER has neither specified the non-party

witnesses it intends to call nor described the substance and necessity of their proffered testimony.

Because the burden is on NVER, the final private interest consideration weighs against transfer in

this case.

On the whole, the private interest factors weigh against transfer.  NVER has done little to

overcome its burden and therefore has failed to demonstrate that "the balance is strongly in favor" of

transfer.  *See Nat'l Presto*, 347 F.3d at 664.  At best, this case presents a tie; and "the tie is awarded

to the plaintiff."  *Id*.

### 2.      Public Interests - the Interest of Justice

The Court must also consider the interest of justice in deciding whether to transfer under §

1404(a).  The factor "is not a definite standard," *Cote*, 796 F.2d at 985, but it "relates . . . to the

efficient functioning of the courts, not to the merits of the underlying dispute," *Coffey*, 796 F.2d at

221.  Nevertheless, it is an important factor and "may be determinative in a particular case, even if

the convenience of the parties and witnesses might call for a different result."  *Id*. at 220.

As with the private interest analysis, the public interest analysis is also guided by several

considerations.  Those considerations include "the court's familiarity with the applicable law, the

speed at which the case will proceed to trial, and the desirability of resolving controversies in their

locale."  *First Nat'l Bank*, 447 F. Supp. 2d at 912 (quotation marks omitted).  *See also Heller*, 883

F.2d at 1293; *IP Innovation*, 289 F. Supp. 2d at 955.  *Accord Gulf Oil*, 330 U.S. at 508-09 (analyzing

transfer under the common law doctrine of *forum non conveniens*).

The first consideration, the court's familiarity with the applicable law, is the one to which the parties devote the most attention.  As a general rule, "it is advantageous to have federal judges try a case who are familiar with the applicable state law."  *First Nat'l Bank*, 447 F. Supp. 2d at 914 (quotation marks and citations omitted).  *See also Coffey*, 796 F.2d at 221.  "However, where the law in question is neither complex nor unsettled, the interests of justice remain neutral between competing courts."  *First Nat'l Bank*, 447 F. Supp. 2d at 914 (quotation marks and citations omitted).  *See also Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000) (noting that "courts are often called upon to decide substantive legal questions based upon another state's laws" and that "[g]enerally, contract law is not particularly complex").  NVER contends that ultimately Washington law will apply to this case.  Accepting that as true, this is a run of the mill contract dispute; this court is often called upon to interpret another state's laws.  There is nothing so unusual about this case that will make the Court's job overly difficult.  In sum, this factor is neutral, at best.

Similarly, the second consideration provides some additional weight to transferring this case. In determining the relative speed at which a case will proceed to trial – in other words, the relative congestion of the venues – courts have examined the median times to trial and disposition as listed in the Federal Court Management Statistics reports.  *See, e.g.*, *First Nat'l Bank*, 447 F. Supp. 2d at 913-14.  In 2006, the median time to civil disposition for cases in the Northern District of Indiana was 10.8 months; whereas the median time for the Western District of Washington was 9.1 months. *See* FED. CT. MGMT. STATISTICS (2006), *available at* http://www.uscourts.gov/cgi-bin/cmsd2006.pl. The median time to civil trial for the Northern District of Indiana was 25 months; the median time to

civil trial for the Western District of Washington was 19 months.  *Id*.  These statistics demonstrate that the second consideration weighs slightly in favor of transferring the present action to the Western District of Washington.  *See also IFC Credit Corp. v. Aliano Bros. Gen. Contractors, Inc.*, 437 F.3d 606, 608 (7th Cir. 2006) ("A court system has an independent interest in deciding which court in the system shall hear which cases, to minimize imbalances in workload.").  Therefore, this consideration weighs in favor of transfer.

The final consideration regarding the interest of justice is the relationship of the communities to the litigation.  NVER emphases that Indiana has little interest in the outcome of this litigation. (*See* Brief at 11-12.)  But, as noted above with respect to personal jurisdiction, NVER underestimates Indiana's interest.  If Plaintiff's allegations are to be believed, this case involves manufacturing within Indiana, interaction with NVER's customers in Indiana, and losses to an Indiana corporation.  On the other hand, Washington also has an interest in this litigation.  First, the litigation concerns the existence of a Washington dealership for Travel Supreme's products. Second, assuming it is applicable, the State has an express interest in dealer's relationships with their suppliers.  *See* RCW 46.70.010 *et seq*.  On balance this consideration neither militates in favor or nor against transfer.

NVER cites to *DaimlerChrysler Motors Co., L.L.C. v. VinDevers, Inc.*, No. 06-12373, 2007 WL 187933 (E.D. Mich. Jan. 19, 2007), as support for its motion to transfer.  (*See* Reply at 5-6.) But that case isn't even close to ours.  In *DaimlerChrysler*, the court held that transfer was appropriate due to the convenience of the parties because the defendant was caring for his sick elderly parents, requiring him to refrain from travel, and because he had his own health problems that made travel difficult.  *Id*.  NVER has given no similar justification to transfer this case.  If

anything, *DaimlerChrysler* demonstrates that a court's analysis should be flexible and allow transfer even where some of the considerations counsel a different conclusion than the one reached by the court.

Here, the interest of justice weigh slightly in favor of transferring this case. However, I find that the factors as a whole do not weigh strongly in favor of transfer. It is the movant's burden to demonstrate "that the transferee forum is <u>clearly</u> more convenient," *Coffey*, 796 F.2d at 219-20 (emphasis added), and that "<u>unless the balance is strongly in favor of the defendant</u>, the plaintiff's choice of forum should rarely be disturbed," *Nat'l Presto*, 347 F.3d at 664 (quotation marks omitted; emphasis added). NVER has not met its burden, and consequently this case should not be transferred.

## III.  CONCLUSION

Accordingly, the exercise of personal jurisdiction over Defendant NVER is proper and this Court is a proper venue for the adjudication. In addition, this Court does not believe it should exercise its discretion to transfer this case on the basis of § 1404(a). Therefore, Defendant NVER's Motions to Dismiss and/or Transfer [DE7&8] are **DENIED**.

**SO ORDERED.**

ENTERED: October 5, 2007

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT